IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PNC BANK,
NATIONAL ASSOCIATION,

     Plaintiff,

v.

LEWIS CONTRACTING
SERVICES, LLC,

     Defendant.

CIVIL ACTION FILE NO.

1:23-cv-828-JKL

## <u>ORDER</u>

This breach of contact action is before the Court on Plaintiff PNC Bank, National Association's motion for summary judgment [Doc. 21] and Defendant Lewis Contracting Services, LLC's motion to dismiss [Doc. 23].  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge [*see* Docs. 17, 18], rendering this order a judgment in this action pursuant to 28 U.S.C. § 636(c).  For the reasons that follow, Defendant's motion to dismiss is **DEEMED WITHDRAWN**, and Plaintiff's motion for summary judgment is **GRANTED**.

## I.    BACKGROUND

Plaintiff PNC Bank, National Association ("PNC") filed this case on February 24, 2023.  [Doc. 1.]  In its complaint, PNC alleges that in June 2020, Defendant Lewis Contracting Services, LLC ("LCS") executed a Commercial Credit Card Agreement (the "P-Card Agreement") for a commercial credit card with a credit limit of $300,000.00.  [*Id.* ¶ 5, 6.]  PNC asserts that around July 2022, LCS defaulted on its credit account with PNC after LCS failed to make timely principal and interest payments under the P-Card Agreement.  [*Id.* ¶ 7.]  PNC sent demand letters in October and November 2022, but alleges that LCS still failed to make payments to bring the account current.  [*Id.* ¶¶ 8-11.]  PNC contends that as of the outset of this litigation, LCS's outstanding balance under the P-Card Agreement was $143,599.73.  [*Id.* ¶ 12.]  Based upon the foregoing, PNC brings a breach of contract claim for damages under the P-Card Agreement, and seeks reasonable attorney fees and costs.  [*Id.* ¶¶ 13-20.]

## II.    SERVICE OF PROCESS

Following discovery and PNC's motion for summary judgment, LCS filed it motion to dismiss, in which it contends that PNC never served it with process[1] and

---

[1] Because proper service of process is normally a requirement for the court to exercise personal jurisdiction, the arguments contained in the motion to dismiss must be addressed prior to evaluating the substantive grounds for summary

that the case should be dismissed without prejudice as a result.  [Doc. 23; *see also* Doc. 22 at 3-4.][2]  In support, it attaches the declaration of Charlie Lewis, who states that "[n]o one has ever personally served Lewis Contacting with a copy of this lawsuit," and that it only "received by mail a letter from counsel for PNC Bank which purported enclose a 'service copy' of the lawsuit."  [Doc. 22-2 ¶¶ 3, 4.]

Since filing it, LCS has technically withdrawn the motion [*see* Doc. 26], and therefore, the motion is **DEEMED WITHDRAWN**.[3]  LCS nevertheless continues to maintain that PNC's motion for summary judgment should be denied because PNC never served it with process, [*see* Doc. 23 at 3-4; *see also* Doc. 26 at 1 ("Mr. Lewis was in fact never served with process in this case.  At a bare minimum, there is therefore a genuine dispute of material fact preventing entry of summary judgment in this case.")].  As a result, the Court will address that jurisdictional argument before turning to the substance of PNC's motion for summary judgment.

---

judgment raised in PNC's motion for summary judgment.  *See Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 182-83 (11th Cir. 2007).

[2] Although LCS filed a motion to dismiss, it included no brief in support. [*See* Doc. 23.]  It appears, instead, that substance of its argument is contained in its response to PNC's motion for summary judgment, filed around the time of its own motion [*see* Doc. 22 at 3-4], to which it has attached evidentiary material in support [*see* Doc. 22-2 (Decl. of Charlie Lewis)].

[3] The Clerk is **DIRECTED** to update the docket to correct the status of the motion to the dismiss.

Federal Rule of Civil Procedure 4 provides that summons must be served with a copy of the complaint, and that a plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m).  Fed. R. Civ. P. 4(c)(1); *see also Anderson v. Osh Kosh B'Gosh*, 255 F. App'x 345, 347 (11th Cir. 2006) ("A plaintiff is responsible for serving the defendant with both a summons and the complaint within the time permitted under Rule 4(m).").  If a defendant is not served within the 90-day period established by Rule 4(m), the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may bring a motion to dismiss for insufficient service of process.  Fed. R. Civ. P. 12(b)(5).  The burden of establishing the validity of service of process is on the serving party—here, PNC.  *Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008) (citing *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980)); *see also Piccard v. Deedy*, No. 1:19-CV-4268-MLB, 2021 WL 12130562, at *2 (N.D. Ga. Feb. 2, 2021) ("When a defendant challenges service of process, 'the serving party bears the burden of proving its validity or good cause for failure to effect timely service.'")

4

(quoting *Sys. Signs Supplies v. U.S. Dep't of Just.*, 903 F.2d 1011, 1013 (5th Cir. 1990)).

"In determining whether the burden has been met, the court shall apply the same standards of proof governing motions to dismiss for lack of personal jurisdiction." *Robinson v. Choice Hotels Int'l Serv. Corp. Serv. Co.*, No. 1:22-CV-3080-MHC, 2023 WL 3627861, at *7 (N.D. Ga. Apr. 13, 2023) (citing *Lowdon*, 534 F. Supp. 2d at 1360), *aff'd*, No. 23-11733, 2024 WL 983926 (11th Cir. Mar. 7, 2024). Under that standard, the "defendant first bears the burden of producing affidavits that, in non-conclusory fashion, demonstrate the absence of jurisdiction." *Lowdon*, 534 F. Supp. 2d at 1360 (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). "The plaintiff then bears the burden of presenting 'enough evidence to withstand a motion for directed verdict'"; but assuming the plaintiff comes forward with that "countering evidence," "the court must construe all reasonable inferences in favor of the plaintiff." *Id.* at 1360 (quoting *Meier.*, 288 F.3d 1264, 1268-69); *see also Sanho Corp. v. KaiJet Tech. Int'l Ltd.*, Inc., No. 1:18-CV-05385-SDG, 2020 WL 4346881, at *3 (N.D. Ga. July 29, 2020). "Absent an evidentiary hearing, the plaintiff's presentation of sufficient evidence to defeat a motion for directed verdict ends the inquiry favorably to the plaintiff." *Lowdon*, 534 F. Supp. 2d at 1360; *see also Smith v. Diamond Dev. &*

*Invs., Inc.*, No. 1:13-CV-2017-TCB-JFK, 2014 WL 11930618, at *2 (N.D. Ga. Jan. 10, 2014), *report and recommendation adopted*, 2014 WL 12013445 (N.D. Ga. Jan. 28, 2014).

Because LCS has presented the affidavit of Mr. Lewis, denying that it had been served in this case, the Court must next consider the evidence PNC has put forward. On March 17, 2023, it filed a return of service that included a Proof of Service form executed by Rocellious Pope, who stated that after an unsuccessful attempt on March 13, 2024, he successfully served summons and the complaint on LCS by serving Charles Lewis personally at 8584 Covington Highway, Lithonia, Georgia, on March 14, 2023, around 11:30 am ET. [Doc. 5.] The Proof of Service form is signed by Mr. Pope and includes a description of Mr. Lewis.[4] [*Id.*]

In the absence of an evidentiary hearing,[5] the evidence in this case is in equipoise—with each side submitting written testimony affirming their position and directly contradicting the other. But with the Court required to construe all evidence in PNC's favor on the issue, it is clear that PNC "has presented sufficient evidence to defeat a motion for directed verdict on the issue of personal service,"

---

[4] Mr. Lewis's declaration makes clear that he is the manager of LCS, and LCS does not argue that he was not authorized to accept service on LCS's behalf. [Doc. 22-2 ¶ 1.]

[5] Which LCS has not requested. [*See* Docs. 22, 23, 26]

6

*Lowdon*, 534 F. Supp. 2d at 1361.  Accordingly, even if it had not been withdrawn, LCS's motion to dismiss would be due to be denied on this basis.

Beyond the foregoing, "[o]bjections to service of process . . . like any other objection to jurisdiction over the person, can be waived by the party over whom jurisdiction is sought." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 2014).  Courts in this Circuit "have found that a defendant waives the service of process defense when it 'substantially participates in the litigation without pursuing the defense.'" *Poole v. Dhanraj Amrit, Jungle Trans, LLC*, No. 1:17-CV-05511-LMM, 2018 WL 6380792, at *3 (N.D. Ga. Aug. 6, 2018) (quoting *Dockery v. Doyle*, No. 1:05-CV-0347-CC, 2006 WL 8431989, at *6 (N.D. Ga. Sept. 14, 2006)).  Thus, even when a party has a meritorious objection to service of process—indeed, even if it is listed as a defense in its answer—that party will waive the objection, for instance, if it participates in the Rule 26(f) conference and discovery without properly raising a challenge.  *See Poole*, No. 1:17-CV-05511-LMM, 2018 WL 6380792 at *3-4; *see also Rentz v. Swift Transp. Co.*, 185 F.R.D. 693, 696-97 (M.D. Ga. 1998); *Mattive v. Allstate Ins. Co.*, No. CV494-54, 1994 WL 676723, *3-4 (S.D. Ga. Nov. 18, 1994); *cf.* LR 16.2, NDGa. (specifically requiring parties to include "any objections, supported by authority, to [the] Court's jurisdiction" when filing a joint preliminary report and discovery plan).

7

LCS, meanwhile, has done just that.  Despite noting the issue in its answer [*see* Doc. 7 at 1, Second Defense], the parties affirmed in their joint preliminary report and discovery plan that "[t]here is no question regarding this Court's jurisdiction" [*see* Doc. 13 at 2], and then proceeded through discovery without issue [*see*, *e.g.*, Docs. 15, 20 (certificates of service for LCS's initial disclosures and discovery)].  It was not until after discovery was complete and after PNC moved affirmatively for summary judgment that LCS finally challenged the sufficiency of process in this case.  In such instances, the Court agrees with the reasoning of *Pool*, *Rentz*, and *Mattive* above, and concludes that because LCS substantially participated in the litigation without pursuing its defense of inadequate service, it has waived that defense.  LCS's argument about service therefore fails for this additional reason.

Accordingly, for the reasons explained above, the arguments contained in LCS's motion to dismiss and summary judgment response brief regarding service of process will not serve to avoid the disposition of this case on the merits.

## III.    PNC'S MOTION FOR SUMMARY JUDGMENT

PNC has moved for summary judgment, arguing that it is entitled to judgment as a matter of law on its claim for breach of the P-Card Agreement. [Doc. 22.]  LCS, meanwhile, opposes the motion, arguing that PNC's motion for

summary judgment is untimely, and that regardless, PNC has "utterly failed" to demonstrate that it has a right to sue LCS under the P-Card Agreement. [*See* Doc. 25 at 3-6.][6]  The Court takes up these arguments below.

### A. Timeliness

LCS argues that because discovery in this case closed on December 4, 2023, but PNC did not file its motion for summary judgment until March 6, 2023, the motion should be denied as untimely. [*See* Doc. 22 at 6.]  PNC, meanwhile, argues that the interests of judicial economy counsel that the motion should be considered, particularly given the straightforward legal and factual issues at play.  [Doc. 25 at 5-6.]

There is no dispute that PNC's motion is untimely.  The Local Rules state that motions for summary judgment "shall be filed . . . not later than thirty (30) days after the close of discovery," unless otherwise ordered by the court.  LR 56.1(D), NDGa.  PNC's motion was therefore filed roughly two months late.  That said, the Eleventh Circuit has held that trial courts "may consider an otherwise untimely motion [for summary judgment] if, among other reasons, doing so 'would

---

[6] As noted above, LCS reiterates its service of process argument in its summary judgment opposition.  [*See* Doc. 22 at 3-4.]  For the reasons already explained, its argument is without merit.

be in the course of action most consistent with the interest of judicial economy.'" *Thomas v. Kroger Co.*, 24 F.3d 147, 149 (11th Cir. 1994) (quoting *Matia v. Carpet Transp., Inc.*, 888 F.2d 118, 119 (11th Cir. 1989)); *see also Doll v. Sec'y, Fla. Dep't of Corr.*, 715 F. App'x 887, 891 (11th Cir. 2017).  "District courts enjoy broad discretion in deciding how best to manage the cases before them, and that discretion extends to whether to consider untimely motions for summary judgment." *Newsome v. Chatham Cnty. Detention Ctr.*, 256 F. App'x 342, 345 (11th Cir. 2007)) (cleaned up).

In this case, in the absence of any countervailing concerns identified by LCS, the interests of judicial economy weigh in favor of considering PNC's motion.  As will be explained below, LCS has raised a single substantive defense[7] to PNC's motion for summary judgment:  that it signed the P-Card Agreement in favor of PNC's predecessor—that is, BBVA USA—and PNC's proffered evidence fails to demonstrate it can recover on the Agreement.  [*See* Doc. 22.]  LCS does not argue that it did not incur the debt alleged or that it did not default on the P-Card Agreement; it simply contends that PNC cannot enforce the Agreement.  [*Id.*]  (*See also* R-DSUMF ¶ 5 (admitting that LCS "defaulted under the P-Card Agreement

---

[7] Beyond its argument that it was never served and that PNC's motion is untimely.

by failing to timely pay all outstanding amounts due on or before the P-Card maturity date of July 31, 2022.").)  But as will also be explained, PNC has in fact put on sufficient evidence that it can enforce the P-Card Agreement against LCS. Given this, "there [i]s no point in going to trial with a claim" that, for reasons explained below, LCS is doomed to lose.  *Newsome*, 256 F. App'x at 345.

And other than the mere untimeliness of the motion, LCS has not identified any prejudice it might suffer or other concern[8] that would justify the Court disregarding or denying the motion.  [*See* Doc. 22 at 6 (stating that the motion should be denied solely "[b]ecause Plaintiff failed to comply with the timely filing requirements").]  Indeed, belying any prejudice, LCS in fact responded to the motion for summary judgment, affirmatively moved to dismiss the case, and filed other supporting materials.  [*See* Docs. 22, 23, 26.]  And in straightforward cases such as the one at bar, mere untimeliness will not be sufficient to justify denying an otherwise meritorious motion for summary judgment—in *Matia*, for instance, the Eleventh Circuit affirmed the district court's decision to consider the

---

[8] For instance, concerns related to prejudice, the impact of any delay on the judicial proceedings, the reason for the delay, and whether the movant acted in good faith.  *Moon v. Rockdale Cnty.*, No. 1:14-CV-3926-TCB, 2015 WL 13309292, at *1 (N.D. Ga. Nov. 16, 2015) (discussing trial court's discretion to extend deadlines when a party failed to act due to excusable neglect) (citing *Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1201 (11th Cir. 1999)).

defendant's summary judgment motion filed four months after the local rules provided, *see* 888 F.3d at 119; and in *Newsome*, it affirmed the decision to consider a motion filed more than six months after the court's deadline, doing so despite the party's "failure to offer any explanation for the delay," 256 F. App'x at 345.

Because PNC's motion for summary judgment raises straightforward legal and factual issues, and because LCS has not identified any prejudice to itself or bad faith on PNC's part, the interests of judicial economy weigh in favor of considering the substance of the motion for summary judgment, which the Court does presently.

### B. Whether Summary Judgment is Warranted

#### 1. Summary Judgment Standard

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that it is entitled to summary judgment. *Id.* ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact."); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (holding that *Celotex* did not change the rule that the movant bore the initial burden, and stating, "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial").

"Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The nonmovant is required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation omitted); *see* Fed. R. Civ. P. 56(c). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor. *Id.* at 255. "Only if after introduction of the non-movant's evidence, the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial—that is, such that no reasonable jury could find for the non-movant—

should the movant be permitted to prevail without a full trial on the issues." *Ameris Bank v. SB Partners, LLC*, 157 F. Supp. 3d 1356, 1359 (S.D. Ga. 2016) (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (marks omitted)).

### 2.  Whether PNC May Enforce the P-Card Agreement

Before turning to the underlying facts about LCS's use of its credit account, the Court addresses the primary substantive issue raised by LCS in its response to the motion for summary judgment—namely, its contention that "PNC Bank has not made any showing of any assignment of the [P-Card] Agreement from BBVA USA to PNC Bank (or multiple parties in the chain of title), or evidence of a merger (or series of mergers) such that PNC Bank and BBVA USA merge[d]," and that summary judgment is therefore inappropriate on PNC's breach of contract claim. [Doc. 22 at 5-6.]  (*See also* R-DSUMF ¶¶ 1, 2, 4, 6, 8, 9, 10, 12, 13, 14.)

The Court cannot agree, as federal and state law call for the automatic vesting of a predecessor bank's contractual rights following the merger of multiple banking entities—such as PNC and BBVA—in the successor entity.  Under the National Banking Act:

> The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises, and interests of the individual merging banks or banking associations in

> and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, including appointments, designations, and nominations, and all other rights and interests as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, and receiver, and in every other fiduciary capacity, in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger, subject to the conditions hereinafter provided.

12 U.S.C.A. § 215a(e). Furthermore, under Georgia law:

> Any claim existing or action pending by or against any party to the plan may be prosecuted to judgment as if the merger, share exchange, or consolidation had not taken place or the resulting bank or trust company may be substituted in its place.

O.C.G.A. § 7-1-536(f). Finally, Georgia law also provides that "[e]very other corporation or entity party to the merger merges into the surviving corporation or entity and the separate existence of every corporation or entity except the surviving corporation or entity ceases," such that "title to all real estate and other property owned by, and every contract right possessed by, each corporation or entity party to the merger is vested in the surviving corporation or entity without reversion or impairment, without further act or deed, and without any conveyance, transfer, or assignment having occurred." O.C.G.A. §§ 14-2-1106(a)(1), (2).

15

The effect of these laws is that in the case of corporate bank mergers, the interests and rights—including the contractual rights—of a predecessor bank "vest[] automatically" in the surviving bank "without conveyance, transfer, or assignment." *Jackson v. Bank of Am., NA*, 578 F. App'x 856, 861 (11th Cir. 2014) (citing *Nat'l City Mortg. Co. v. Tidwell*, 293 Ga. 697, 701 (2013)); *see also Tidwell*, 293 Ga. at 701 ("When corporations merge, state law provides that the title to each corporation's property vests in the surviving corporation without any conveyance, transfer, or assignment . . . .  Similarly, federal banking law provides that the corporate existence of merging banks shall continue in the 'receiving association,' which is considered the same corporation as its predecessor.") (citations omitted).[9] Thus, "the claims, existing or pending, of banks participating in a merger survive the merger and may be prosecuted by the successor bank," because under the foregoing statutes, the two entities are "deemed the same entity under federal and state law by virtue of their merger." *In re Lovett*, 560 B.R. 372, 374 (Bankr. M.D. Ga. 2016) (citing *Tidwell*, 293 Ga. at 701.)

---

[9] The Eleventh Circuit has held that "this merger rule" applies regardless of whether the bank is federally chartered. *White v. Bank of Am. Bank, NA*, 597 F. App'x 1015, 1019 (11th Cir. 2014).

16

Moreover, courts have accepted (1) affidavits from bank vice presidents; (2) certificates from bank secretaries; and (3) letters from the Office of the Comptroller of Currency as evidence of a bank merger sufficient as a matter of law to automatically transfer and vest rights in the successor bank for the purposes of summary judgment. *See Wells Fargo Bank, N.A. v. Tom Roberts Const. Co.*, 629 F. App'x 877, 880 (11th Cir. 2015) (citing 12 U.S.C. § 215a(e)) (affirming summary judgment and stating that "the Certificate of Merger and letter from the Comptroller of the Currency establish, without dispute, that Wells Fargo acquired the loan by merger and inherited the rights of Wachovia"); *PNC Bank, Nat'l Ass'n v. MDTR LLC*, No. 5:14-CV-573-TJC-PRL, 2015 WL 13260389, at *6 (M.D. Fla. Nov. 20, 2015) (at summary judgment, accepting affidavit from bank "asset manager and vice president"[10] stating that series of mergers occurred as sufficient for PNC to enforce promissory note), *report and recommendation adopted*, 2015 WL 13260293 (M.D. Fla. Dec. 22, 2015); *see also In re Lovett*, 560 B.R. at 374 (at final pre-trial conference in adversary proceeding, finding certificate from secretary and letter from Office of Comptroller of the Currency sufficient to

---

[10] *See PNC Bank, Nat'l Ass'n v. MDTR LLC*, No. 5:14-CV-573-TJC-PRL, Doc. Entry 41-1 ¶ 3 (affidavit of Craig Ridinger, an "asset manager and vice president" for PNC) (MD. Fla.).

establish merger for purposes of action to deny dischargeability of debt). *Cf. Clark v. PNC Bank, N.A.*, No. 1:13-CV-1305-WSD, 2014 WL 359932, at *3 (N.D. Ga. Feb. 3, 2014) (plaintiff's allegation that bank merged into PNC was sufficient for purposes of motion to dismiss plaintiff's wrongful foreclosure claim).

In support of its motion, PNC has put forward:  (1) an affidavit from a PNC vice president attesting to the fact that LCS signed the P-Card Agreement with PNC's predecessor-in-interest, BBVA USA [Doc. 21-2 at 2-7]; (2) a Certificate memorializing the merger of BBVA USA into PNC as a "wholly owned subsidiary" of PNC [Doc. 24-1 at 2]; and a letter from the Office of the Comptroller of the Currency providing "official certification" of the merger and recognizing PNC as the resulting successor bank [Doc. 24-1 at 3-4].  This is sufficient "to establish, without dispute, that [PNC] acquired the [P-Card Agreement] by merger and inherited the rights of [BBVA USA]." *Tom Roberts Const. Co.*, 629 F. App'x at 880.  Accordingly, LCS's arguments that PNC has no right to enforce the P-Card Agreement is without merit.  The Court now turns to the undisputed facts.

### 3. **Facts**[11]

Around June 11, 2020, LCS and BBVA USA, PNC's predecessor-in-interest, executed the P-Card Agreement, extending commercial credit to LCS in the originally stated maximum principal amount of $300,000.00. (Aff. Of Pamela Carey [Doc. 21-2 at 2-7] ¶¶ 10-11.) Under its terms, LCS agreed to pay all amounts due as provided in the Agreement. (P-Card Agreement [Doc. 22-2 at 9-20] ¶ 2.) LCS also agreed to pay "all reasonable expenses incurred by the Bank in collecting or attempting to collect the amounts that [LCS] owes the Bank . . . including court costs and reasonable attorneys' fees." (Carey Aff. at ¶ 21; P-Card Agreement ¶ 21; *see also* Def.'s Resp. to Req. for Adm. [Doc. 21-2 at 30-34], Nos. 1-2). The maturity date of the account was July 31, 2022. (Carey Aff. ¶ 13.) And as discussed above, PNC is the successor in interest to BBVA USA and therefore, under the National Banking Act and Georgia law, has the same rights as BBVA USA had to enforce the P-Card Agreement. (Carey Aff. ¶ 11) [*See also* Doc. 21-2 at 2-7; Doc. 24-1 at 2-4.]

---

[11] LCS's objections to PNC's statements of fact stem almost entirely from its position that PNC cannot enforce the P-Card Agreement because it was originally executed by BBVA USA. (*See* R-DSUMF ¶¶ 1-14.) Those objections are **OVERRULED**. With one exception—regarding whether PNC has established the reasonableness of the attorney fees it has paid—LCS does not object to the consideration of any of the underlying evidence presented by PNC. (*Id.*)

LCS defaulted under the P-Card Agreement by failing to timely pay all outstanding amounts due on or before the P-Card maturity date of July 31, 2022, the maturity date.  (DSUMF ¶ 5.)  The P-Card agreement provides that upon default, PNC may declare the unpaid balance of the account, together with all fees, expenses, and charges payable under the P-Card Agreement immediately due and payable.  (P-Card Agreement ¶¶ 19-20; *see also* Carey Aff. at ¶ 16; LCS's Resp. to Req. for Adm., No. 5.)  In October and November 2022, PNC demanded all amounts outstanding under the P-Card agreements in letters to LCS.  (Carey Aff. ¶¶ 16-18, 22.) [*See also* Doc. 21-2 at 24-29 (Oct. 6, 2022 and Nov. 7, 2022 demand letters).]

LCS admits that it has not paid PNC after its October demand (Carey Aff. ¶ 23; R-DSUMF ¶ 9); that there have been no modifications, releases, or cancellations to the terms of the P-Card Agreement (DSUMF ¶ 11); and that PNC has not taken any actions that would waive or release any rights or remedies under the P-Card Agreement (DSUMF ¶ 12; R-DSUMF ¶ 12).

As of February 28, 2024, the total outstanding principal amount due and owing from Lewis Contracting pursuant to the terms of the P-Card Agreement was

$143,599.73.[12]   (Carey Aff. at ¶ 20.)   As of that same date, PNC had incurred $12,206.00 in attorney fees and $224.48 in court costs in connection with collecting on the P-Card Agreement.  (Carey Aff. ¶ 24.)

### 4. Discussion

A party asserting a breach of contract claim has the burden of pleading and proving "(1) the subject matter of the contract, (2) consideration, and (3) mutual assent by the parties to all of the contract terms."  *Importers Serv. Corp. v. GP Chems. Equity, LLC*, 652 F. Supp. 2d 1292, 1300 (N.D. Ga. 2009) (citing O.C.G.A. § 13-3-1 and *Broughton v. Johnson*, 247 Ga. App. 819, 819 (2001)), *aff'd*, 476 F. App'x 717 (11th Cir. 2012).  PNC has done so with the P-Card Agreement, showing that its predecessor-in-interest and LCS executed the Agreement, which provided a promise of credit to LCS and repayment to PNC.  And once a contract has been demonstrated, the elements of a right to recover for the breach of said contract are "(1) the breach and (2) the resultant damages to the party who has the right to complain about the contract being broken.'"  *Id.* (quoting *Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279 (1996) and citing *Graham*

---

[12] LCS objects to consideration of this fact, but only because "PNC has not established why it would have business records of BBVA USA."  (See R-DSUMF ¶ 13.)  But because PNC has established its merger with BBVA, as explained above, this objection is **OVERRULED**.

*Bros. Constr. Co. v. C.W. Matthews Contracting Co.*, 159 Ga. App. 546, 550 (1981) (quotation marks omitted)).

Here, PNC has produced copies P-Card Agreement, evidence of LCS's breach of the Agreement through its failure to repay the amounts owed, and evidence of LCS's default and liability under the terms of the Agreement. LCS has provided neither meritorious objection to PNC's statement of facts that address LCS's liability and default, nor evidence disputing its default or liability. Thus, LCS has admitted the existence of the P-Card Agreement and its default. Because PNC has shown that LCS breached the P-Card Agreement, and LCS has not produced any evidence to dispute PNC's showing, the Court **GRANTS** PNC's motion for summary judgment as to liability. *See Ameris Bank*, 157 F. Supp. 3d at 1360 (granting summary judgment to plaintiff on contract claim in absence of countervailing evidence from defendant).

PNC also argues that summary judgment is appropriate on the amount due under P-Card Agreement. [Doc. 22-1 at 8-9.] PNC has presented the affidavit of Pamela Carey, a PNC Vice President on the Commercial Asset Team and a Custodian of Records, to prove the total amount owed. [Doc. 21-2 at 2-9.] Having reviewed PNC and BBVA's business records, she testified that the total outstanding principal amount due and owing from LCS pursuant to the terms of the

P-Card Agreement is $143,599.73, which has remained due since the debt's maturity date of July 31, 2022. (Carey Aff. ¶¶ 13, 20.) LCS has not challenged these amounts or pointed to contradictory evidence. Accordingly, the Court **GRANTS** summary judgment on this issue and finds LCS liable to PNC for $143,599.73 under the P-Card Agreement. *See Producers Credit Corp. v. Mccleskey*, No. 5:15-CV-214 (CAR), 2015 WL 6126831, at *2 (M.D. Ga. Oct. 16, 2015) ("No evidentiary hearing is necessary to determine PNC's damages because 'the amount of damages is liquidated or can be reduced to a sum certain.'") (quoting *Langsfeld v. Wynne,* No. 1:08-CV-0225-JOF, 2009 WL 383395, at *3 (N.D. Ga. 2009)).

Finally, pursuant to the P-Card Agreement and O.C.G.A. § 13-1-11, PNC argues that it is owed $12,206.00 for attorney fees and $224.48 in court costs, and that it is entitled to summary judgment on those amounts. [Doc. 22-1 at 6-9.] Section 13-1-11 provides that attorney fees specified in notes or "other evidence of indebtedness"[13] are "valid and enforceable and collectable as part of such debt" if the debt is collected through an attorney, the amount is less than 10 or 15 percent

---

[13] Credit agreements such as the P-Card Agreement satisfy this requirement. *See PNC Bank, N.A. v. Leclerc*, No. 1:19-CV-4504-TCB, 2021 WL 1323422, at *6 (N.D. Ga. Mar. 5, 2021); *see also In re Kendrick*, 314 B.R. 468, 473 (Bankr. N.D. Ga. 2004).

of the principal or interest owing on the account,[14] and the appropriate notice has

been provided.  O.C.G.A. §§ 13-1-11(a)(1)-(3).

The amount of attorney fees and costs[15] sought here amount to less than 10

percent of the principal amount owed, and PNC's demand letters to LCS, as well

as its complaint, satisfy the notice requirements.  *Hamilton State Bank v. Kelly Cap.*

*Invs., LLC*, 335 Ga. App. 252, 264 (2015) ("[S]o long as the attorney fee provision

of a [credit agreement] does not violate the strictures of OCGA § 13-1-11(a), it is

---

[14] The statute itself provides that, if a credit agreement calls for the payment of "reasonable attorney's fees without specifying any specific percentage" (as the P-Card Agreement does), then reasonable fees shall be no more than 15 percent of the first $500 of principal and interest due, and no more than 10 percent of the balance.  O.C.G.A. § 13-1-11(a)(2); *see also Long v. Hogan*, 289 Ga. App. 347, 350 (2008).  As a result, LCS's argument that PNC has not established that its attorney fees, which are significantly below this threshold, are not reasonable is without merit.

[15] Courts applying O.C.G.A. § 13-1-11 have included court costs in the calculation of reasonable attorney fees, *see Ameris Bank*, 157 F. Supp. 3d at 1360; *Bank of the Ozarks v. Babb Props., LLC*, No. 4:11-CV-0259-HLM, 2011 WL 13229392, at *4 (N.D. Ga. Dec. 21, 2011), and because the P-Card Agreement expressly provides for the recovery of "court costs and reasonable attorneys' fees," (see P-Card Agreement ¶ 21), the Court finds it appropriate to include them in PNC's recovery in this case.  *Cf. Ins. Indus. Consultants, Inc. v. Essex Inv., Inc.*, 249 Ga. App. 837, 843 (2001) (remanding for consideration of attorney fees and costs, "as the plain terms of the lease authorizes the award of attorneys fees, expenses, and costs."); *Branch Banking & Tr. Co. v. Hamby, Brooks & McKenzie, Inc.*, No. 4:19-CV-00086-CDL, 2019 WL 13225394, at *4 (M.D. Ga. Sept. 23, 2019) (finding court costs and expenses due under a note in addition to attorney fees awarded under O.C.G.A. § 13-1-11).!

24

enforceable.") (citing *S&A Indus., Inc. v. Bank of Atlanta*, 247 Ga. App. 377, 383 (2000)); *see also In re Northlake Hotels, Inc.*, No. 12-80104-WLH, 2014 WL 1477397, at *3 (Bankr. N.D. Ga. Apr. 3, 2014) ("Upon the giving of notice and the passage of 10 days, the right to statutory attorney's fees becomes fixed."); *see also Lakeview Loan Servicing, LLC v. Mobley*, No. 1:16-CV-4572-MHC, 2021 WL 12104827, at *10 (N.D. Ga. July 21, 2021) (complaint with demand will satisfy notice requirement).  LCS has not challenged the P-Card's provision on attorney fees and costs, or the notice provided by PNC, and as noted above, § 13-1-11 renders the amount of fees and costs accrued and demanded reasonable, as they are below the relevant statutory threshold.  Accordingly, PNC's motion for summary judgment on this the issue is **GRANTED**, with LCS liable for $12,206.00 in attorney fees and $224.48 in court costs and expenses.[16]

---

[16] "Under O.C.G.A. § 13-1-11(b)(3), a court 'may hold a hearing to decide the matter of attorney's fees or may award attorney's fees based on the written evidence submitted to the court.'"  *Berkshire Bank v. Snellville WOA, LLC*, No. 1:21-CV-00746-SCJ, 2022 WL 3702114, at *5 (N.D. Ga. Apr. 13, 2022).  Because LCS does not advance any particular challenge to the attorney fees in this case, other than generally questioning their reasonableness, the Court will resolve the issue on the parties' papers.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** PNC's motion for summary judgment [Doc. 21], and **DEEMS** LCS's motion to dismiss **WITHDRAWN** [Doc. 23].  The Court further finds that LCS is liable to PNC (1) under the P-Card Agreement in the amount of $143,599.73 and (2) under the P-Card Agreement and O.C.G.A. § 13-1-11 for attorney fees and court costs in the amount of $12,206.00 and $224.48, respectively.

Because it appears that this Order resolves all of the parties' claims in this action, the Court **DIRECTS** the Clerk to **CLOSE** this case and to **ENTER** judgment in favor of PNC and against LCS in accordance with this Order.

IT IS SO ORDERED this 9th day of August, 2024.

_____
JOHN K. LARKINS III
United States Magistrate Judge